Jane DOE, individually and on behalf of her minor dependent child, and on behalf of all others similarly situated, Plaintiffs,

Henrietta Roe, individually and on behalf of her minor dependent children, Intervenors,

v.

Wilbur J. SCHMIDT, individually and as Secretary of the Wisconsin Department of Health and Social Services, and his Agents, Employees, Successors in Office, Assistants and all others acting in concert or cooperation with him or at his direction or under his control, Defendants.

Civ. A. No. 70–C–196.

United States District Court, E. D. Wisconsin.

July 13, 1971.

**160**

Steven H. Steinglass and James A. Walrath, Milwaukee, Wis., for plaintiffs and intervenors.

Robert W. Warren, Atty. Gen., by Ward L. Johnson, Asst. Atty. Gen., Madison, Wis., for defendants.

Before FAIRCHILD, Circuit Judge, REYNOLDS, Chief District Judge, and TEHAN, Senior District Judge.

## DECISION

REYNOLDS, Chief District Judge.

This is a class action challenging the validity of certain eligibility requirements for the aid to families with dependent children program (AFDC) in Wisconsin. These eligibility requirements are contained within § 49.19(4) (d) (4–7) of the Wisconsin Statutes (1969) which is at issue in this lawsuit and provides as follows:

"49.19 Aid to families with dependent children.

\* \* \* \* \* \*

(4) \* \* \* "(d) Aid may be granted to the mother or stepmother of a dependent child if she is without a husband unless she:

\* \* \* \* \* \*

"4. Is the wife of a husband who has continuously abandoned or failed to support her, if the husband has been legally charged with abandonment under s. 52.05 or with failure to support under s. 52.055 or in proceedings commenced under s. 52.10; or

"5. Has been divorced and is without a husband or legally separated from her husband and is unable through use of the provisions of law to compel her former husband to adequately support the child for whom aid is sought; or

"6. Has commenced an action for divorce or legal separation and obtained a temporary order for support under s. 247.23 which order is either insufficient to adequately meet the needs of the child or cannot be enforced through the provisions of law; or

"7. Has obtained an order under s. 247.08 from the court to compel sup-

port, which order is either insufficient to adequately meet the needs of the child or cannot be enforced through the provisions of law; * * * " * * *."

The plaintiffs maintain that § 49.-19(4) (d) is invalid because it is unconstitutional and because it violates controlling federal law. More specifically, plaintiffs contend that § 49.19(4) (d) is unconstitutional in that:

1. Subsections 4, 5, 6, and 7 establish a conclusive presumption that the absence of a parent from the home is not a bona fide "continued absence" within the meaning of § 49.19(1) (a) [1] unless the mother takes legal action against the absent parent. Plaintiffs contend that this conclusive presumption is not based on incontrovertible fact and therefore is violative of the due process clause of the Fourteenth Amendment.

2. Plaintiffs contend that § 49.19(4) (d) violates the equal protection clause of the Fourteenth Amendment in that it embodies an unreasonable and invidious discrimination between children who are needy and dependent but whose mothers will not or cannot take legal action against the husband, on the one hand, and all other needy and dependent children, on the other. The latter, plaintiffs contend, are granted aid and assistance while the former otherwise eligible children are denied aid and assistance.

3. Plaintiffs make a further claim of unconstitutionality based upon the equal protection clause of the Fourteenth Amendment. They contend that subsections 5, 6, and 7 are unconstitutional in that they discriminate against plaintiffs on the basis of poverty, bestowing aid on persons with sufficient funds to file for divorce, legal separation or support

and maintenance, but denying aid to those without the resources to undertake these legal actions.

4. Plaintiffs also contend that subsections 4, 5, 6, and 7 violate plaintiffs' rights of privacy and marital privacy as secured and protected by the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments. Plaintiffs contend that § 49.19(4) (d) violates these rights because it forces them to take drastic steps to alter, threaten, or terminate their marital status in order to obtain food and clothing for their children.

In addition to the above constitutional allegations, plaintiffs further contend that subsections 4 through 7 of § 49.-19(4) (d) are inconsistent with the federal statute (the Social Security Act of 1935, 42 U.S.C. § 601, et seq.) and the regulations promulgated thereunder by the Department of Health, Education, and Welfare (HEW).

Plaintiffs seek declaratory and injunctive relief and, in addition, seek an award of retroactive benefits amounting to payments to which plaintiffs contend they were entitled but which have been denied them. The named plaintiffs bring this action in their own behalf and on behalf of all those otherwise eligible to receive AFDC assistance but for the requirements contained in subsections 4 through 7 of § 49.19(4) (d).[2]

This action was commenced in the Eastern District of Wisconsin on April 7, 1970. On April 27, 1970, the single district judge denied plaintiff Jane Doe's request for a temporary restraining order. On May 7, 1970, a hearing before the single judge was held on plaintiff Henrietta Roe's motion to intervene as a party plaintiff and to pro-

---

1. Section 49.19(1) (a) provides: "In this section, 'dependent child' means a child under the age of 18, who has been deprived of parental support or care by reason of the death, *continued absence* from the home or incapacity of a parent, * * *." (Emphasis supplied.) See also 42 U.S.C. § 606(a).

2. We find that this is an appropriate case for the maintenance of the action as a class action under Rule 23, F.R.Civ.P. The requirements of 23(a) and (b) (2) are met. The class consists of all those persons eligible to receive AFDC aid and assistance in Wisconsin but for the legal action requirements contained within subsections 4 through 7 of § 49.19(4) (d).

ceed by fictitious name and for a temporary restraining order. Plaintiff's motions were all granted, and the next day the single judge requested the convening of a court of three judges pursuant to 28 U.S.C. § 2281. On May 14, 1970, the Chief Judge of the Court of Appeals for the Seventh Circuit designated the present three-judge court to hear and determine the instant action. Subsequently, plaintiffs moved the single district judge for a modification of the temporary restraining order previously issued. By an order signed by the single district judge on July 30, 1970, the temporary restraining order was extended to cover the entire class of plaintiffs. The case was argued before this three-judge court on October 29, 1970.

For the reasons set forth below, we find that subsections 4 through 7 of § 49.19(4) (d) are inconsistent with the Social Security Act of 1935. Finding the statute invalid on statutory grounds, we do not reach the merits of plaintiffs' constitutional allegations and claims.

## I. FACTUAL BACKGROUND

The following relevant facts are not in dispute. As a condition of eligibility for AFDC assistance in Wisconsin, the state requires that one of several legal actions be undertaken against husbands who are "continuously absent" from their homes for reasons other than incarceration or commitment.

A woman in Wisconsin may qualify for AFDC assistance for herself and her children:

1. If she has been divorced or legally separated from her husband and is unable to compel her husband to support his children through the provisions of law;

2. If she has commenced an action for divorce or legal separation and obtained a temporary order for support which is either insufficient to meet the children's needs or is unenforceable; or

3. If she has obtained a civil order to compel support under § 247.08, Wisconsin Statutes, which order is either insufficient or unenforceable.

A woman may also qualify for AFDC assistance if her husband has been "legally charged" with failure to support or with abandonment. In order to satisfy the requirement that the husband be legally charged, there must be the signing of a criminal complaint and the issuance of either a summons or an arrest warrant. Although not technically necessary, it is the practice in Wisconsin to require female applicants for AFDC, who are either unwilling or unable to commence civil actions, to sign criminal complaints against their husbands in order to establish their eligibility. (District attorneys, supervisory welfare personnel, or others having the requisite information *could* sign such a complaint. However, it is agreed that the practice is as above.)

There is a class of persons composed of applicants and recipients of AFDC financial assistance whose eligibility for such assistance has been denied or terminated because of their failure to commence a legal action against their husbands as required by subsections 4 through 7 of § 49.19(4) (d).

## II. JURISDICTION

Jurisdiction is asserted under 42 U.S. C. § 1983 and 28 U.S.C. § 1343(3) and (4). Although we do not decide the merits of plaintiffs' constitutional claims regarding § 49.19(4) (d), we must, as a threshold matter, consider their jurisdictional sufficiency. The oft articulated standard as to the sufficiency of a federal constitutional claim with respect to founding jurisdiction in a statutory court of three judges is that the constitutional claim must not be insubstantial. Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129, 130–131 (2d Cir. 1967), and cases cited therein. The Supreme Court has held that:

"* * * The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so

clearly results from the previous decisions of this Court as to foreclose the subject. * * *'' California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L. Ed. 1323 (1938).

If plaintiffs' constitutional claims were limited to asserted deprivations of equal protection of the laws in violation of the Fourteenth Amendment, there would be considerable question as to their "substantiality." The plaintiffs commenced the instant action the day after the Supreme Court decided the case of Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).[3] However, plaintiffs also raise constitutional claims based upon due process and the rights of privacy and marriage.

■ Although courts may differ as to its precise constitutional contours, it is clear that one of the fundamental freedoms protected and secured by the constitution is the right of privacy, and, more specifically, after Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), it is clear that *marital privacy* is a right enjoying constitutional protection.[4]

■ Section 49.19(4) (d) requires an AFDC mother to take certain legal actions against her husband in order to become eligible to receive the bare necessities of life for her children. These

legal actions required of an AFDC mother include seeing to it that the husband is prosecuted or taking steps to terminate the marriage. In our view, one need not go beyond the realm of common human experience to take cognizance of the fact that the conditioning of the receipt of public assistance upon a mother commencing divorce, separation, or other legal action against her husband is likely to involve serious intrusions upon the right of marital privacy. Plaintiffs contend that the state may not permissibly condition the receipt of public assistance upon the surrender or significant compromising of the right to marital privacy. While we do not reach the merits of these contentions and, hence, do not attempt to weigh the impact of § 49.19(4) (d) on the right of privacy against the state's interests embodied in § 49.19(4) (d), we do find that plaintiffs' right of privacy claims are not insubstantial.

Plaintiffs further contend that the legal action eligibility requirements contained within § 49.19(4) (d) establish an irrebuttable, conclusive presumption which operates to deprive them of due process of law. Plaintiffs argue that while the Wisconsin AFDC program provides that assistance is to be furnished to needy and dependent children who have been deprived of parental support by virtue of the "continued absence" of a parent, subsections 4

---

3. However, while the *Dandridge* court cast considerable doubt upon the future availability of equal protection claims to public assistance recipients, it is worth noting that *Dandridge* dealt with disparities in the size of public assistance grants, whereas the instant case concerns conditions of public assistance *eligibility*. That is, a case such as the instant case concerns not whether a state may validly choose to pay some needy and dependent children *more* than it pays others but, rather, whether a state may choose to deny aid and assistance *altogether* to some children while granting it to others who are arguably no more "needy" or "dependent."

4. Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.

Ed. 734 (1891); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (dissenting opinion of Mr. Justice Brandeis); Babbitz v. McCann, 310 F.Supp. 293 (E. D.Wis.1970), vacated and remanded on other grounds, 402 U.S. 903, 91 S.Ct. 1375, 28 L.Ed.2d 643 (1971).

through 7 of § 49.19(4) (d) make it impossible for a mother to establish the "continued absence" of her spouse without commencing legal action against him. Plaintiffs maintain that the conclusive presumption that no parental absence from the home is "continued" unless legal actions are undertaken by the mother lacks a rational basis in common experience and does not comport with reality.

In *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), the Supreme Court held that a federal statute which conclusively presumed all gifts made within two years of death to have been made in contemplation of death violated the due process clause of the Fifth Amendment. The Court stated that whether the presumption was viewed as a rule of evidence or of substantive law—

" * * * it constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality, * * *. This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment. [Citations omitted.] 'It is apparent,' this court said in the *Bailey* case (219 U.S. p. 239, 31 S.Ct. 145, 55 L.Ed. 191) 'that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions.' " *Id.,* at 329, 52 S.Ct. at 362.[5]

*Damico v. California,* CCH Pov.L.Rep. ¶ 10,478, p. 11,370 (N.D.Cal.1969), involved virtually the same issues as those presented by the instant case.[6] In finding the California AFDC provisions at issue invalid under the Social Security Act of 1935, the court held that the state could not deny otherwise eligible children AFDC benefits on the basis of a conclusive presumption that parental absence was not "continued" unless either legal actions were commenced or three months had elapsed. In *Remillard v. Carleson,* 325 F.Supp. 1272 (N.D.Cal.1971), a three-judge court held that California could not, under the Social Security Act, deny AFDC benefits to otherwise eligible children on the basis of a conclusive presumption that parental absence from the home was not "continued" where the absence was occasioned by service in the Armed Forces. See also *Doe v. Hursh,* (D.Minn., Nos. 4–69–403 and 409, June 30, 1970).

■ In sum, we find plaintiffs' constitutional claims to be neither obviously without merit nor foreclosed by previous court decisions. Therefore, we find that jurisdiction is present in this three-judge court over plaintiffs' constitutional claims. In addition, we find that this is a proper case for the exercise of pendent jurisdiction over plaintiffs' claims which are based upon the federal statute and regulations. *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Alvarado v. Schmidt,* 317 F.Supp. 1027, 1031–1032 (E.D.Wis.1970).

---

5. See also *Schlesinger v. Wisconsin,* 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926); *Mobile J. & K. C. R. Co. v. Turnipseed,* 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910); *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *United States v. Bowen,* 414 F.2d 1268, 1274–1276 (3d Cir. 1969).

6. The *Damico* decision followed the reversal and remand in the leading case of *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). The California welfare provisions involved in *Damico,* which will be discussed at greater length below, provided that "continued absence" of a parent could not be established unless (a) the mother took legal actions, or (b) a three month period of time had elapsed.

## III. THE STATUTORY CLAIM

The AFDC program, 42 U.S.C. § 601, et seq., is one of four categorical assistance programs established by the Social Security Act of 1935. Although states are not required to participate, all states, including Wisconsin, do so.

The state plan of every participating state must conform to the requirements of the Social Security Act. King v. Smith, supra; Rosado v. Wyman, supra.

Title 42 U.S.C. § 606(a) defines the term "dependent child" as " * * * a needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, * * *."

Title 42 U.S.C. § 602(a) (10) provides that " * * * aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals; * * *."

Title 42 U.S.C. § 601 begins by stating:

"For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life * * *."

In King v. Smith, supra, the Supreme Court traced the history of social welfare legislation and the Social Security Act and concluded as to the congressional intent embodied in the Act that "protection of such [dependent] children is the paramount goal of AFDC." Id., at 325, 88 S.Ct. at 2137. The King court found that this central intent of the Act had been contravened by Alabama in that "otherwise eligible" children were denied assistance by virtue of Alabama's "man-in-the-house" rule. As such, Alabama had "breached its federally imposed obligation to furnish 'aid to families with dependent children . . . with reasonable promptness to all eligible individuals. . . .' " Id., at 333, 88 S.Ct. at 2141.

In Doe v. Shapiro, 302 F.Supp. 761, 764 (D.Conn.1969), the court found that:

"Under the Social Security Act, a child is eligible for and entitled to AFDC assistance if he is both 'needy' and 'dependent.' A child is 'needy' if he 'does not have the income and resources sufficient to assure economic security' when measured against standards of need established by the individual states. HEW, Handbook of Public Assistance, Part IV, § 3120. A child is 'dependent' if a parent is continually absent from the home. 42 U.S.C. § 606(a). These are the only two eligibility requirements which Congress has imposed, * * *."

See also Damico v. California, supra; Doe v. Hursh, supra.

Hence, we approach analysis of the Wisconsin statutory provisions at issue herein with the above principles in mind; namely, that the central intent of the federal statute is the protection of needy and dependent children, and that when a state denies assistance to otherwise eligible (i. e., "needy" and "dependent") children through an eligibility requirement inconsistent with the intent of the federal statute, it breaches its federally imposed obligation "to furnish aid * * * with reasonable promptness to all individuals." Viewed in this framework, we conclude that the legal action requirements embodied in § 49.19(4)(d) cannot withstand plaintiffs' challenge based upon the Social Security Act.

The Wisconsin legal action requirements establish AFDC eligibility requirements which are more restrictive than those contained within the federal statute. Nowhere in the federal statute or in any of the regulations promulgated thereunder is there an AFDC eligibility

requirement similar to the Wisconsin legal action requirements.[7]

The Wisconsin legal action eligibility requirements are not directed at the protection of children but, rather, at furtherance of other interests of the state. By the operation of the eligibility requirements contained in § 49.19(4)(d), children who are otherwise eligible are punished for the acts or omissions of their mother. If she is unable or unwilling to commence legal action against her absent spouse, her inability or unwillingness is punished by depriving children who may be otherwise eligible for the bare necessities of life. Such a policy is not permissible under the federal statute. King v. Smith, supra.

In Damico v. California, CCH Pov.L. Rep. ¶ 10,478, p. 11,370, where an AFDC applicant was required to commence legal actions similar to those required under § 49.19(4)(d) or else wait three months before the state would deem there to be a "continued absence" of the parent, the court stated:

" * * * While the presence or absence of legal action may be one relevant factor in determining whether there is continued absence, it is completely irrelevant in determining whether there is deprivation; for that question must focus on the child, not on the legal status of the parents. By defining 'deprivation' in such an arbitrary manner, the regulation clearly

puts administrative convenience ahead of the welfare of the needy children. This is not permitted under the federal act. King v. Smith, supra." Id., at 11,373.

"We hold that under the Social Security Act, the state may not deny AFDC benefits to otherwise eligible children by means of a conclusive presumption that an absence is not 'continued' before the expiration of three months. * * * [The] 'continued' nature of the absence may be apparent, in an appropriate case, from the very early days of the separation. Protection of the needy children deprived by such an absence is required by the federal Act. We hold only that the [California department] must, in passing upon an application * * *, consider all relevant factors in determining whether the particular absence is 'continued.' " Id., at 11,374.

In Woods v. Miller, 318 F.Supp. 510 (W.D.Pa.1970), the court dealt with a Pennsylvania AFDC eligibility requirement which required an applicant to bring suit against any relative who is legally required to provide support under Pennsylvania law. In finding the provisions at issue invalid under the Social Security Act, the court stated:

"[The state's] regulations provide that court action is an eligibility requirement for assistance, * * * and that if the person refuses to take

---

7. In defense of its utilization of the legal action eligibility requirements in Wisconsin, the state refers by analogy to the NOLEO and URESA provisions of the Social Security Act, § 602(a) (17), (18), (19), (21), (22), and § 610. Defendants appear to argue that these provisions constitute legal action eligibility requirements imposed by the Act itself. However, plaintiffs maintain that since its inception, NOLEO has never been intended by Congress or HEW to constitute an *eligibility* requirement. For present purposes, we find plaintiffs' contentions in this regard to be amply supported. Section 235.70(a), 45 C.F.R., 36 Fed.Reg., No. 40, p. 3869 (Feb. 27, 1971), provides:
"§ 235.70 Notice to law enforcement officials.

"State plan requirements: A State plan under title IV–A of the Social Security Act *must* provide that:
"(a) The appropriate law enforcement officials will be notified in writing promptly as soon as AFDC has been furnished in respect to a child who is believed to have been deserted or abandoned by a parent. *This requirement has no effect upon the determination of eligibility.* * * *" (Emphasis supplied.)
See also the holding and discussion in Doe v. Shapiro, 302 F.Supp. 761 (D. Conn.1969), appeal dismissed, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970); Meyers v. Juras, 327 F.Supp. 759 (D.Ore., 1971).

court action, assistance is discontinued for those members of the assistance unit for whom the relative is legally responsible, * * *. It is this assistance unit, however, that is the essential element of the AFDC program, 42 U.S.C. § 601. These regulations affect the entire family unit, including the children in the household, and penalize the whole unit * * *. As a result, individuals in the unit who are needy and dependent and thus otherwise eligible for assistance are denied it by the imposition of an additional requirement for eligibility. The primary obligation of the AFDC program is to provide assistance to the family unit to encourage the care of dependent children in their own homes or in the homes of relatives. This obligation is not met if an otherwise eligible child is deprived of AFDC funds because of parental misconduct. * * * " *Id.*, at 513–514.

We agree with defendants that the legal action requirements seek to further state interests which are wholly legitimate. The interests of deterring abandonment by parents, preventing fraud and collusion, and enforcing legal support obligations of parents are all indisputably valid state interests. Whether these interests are intelligently served by a statute, such as § 49.19(4) (d) (4–7), is a question for the legislature, not this court. We hold only that where, as here, it appears that there are alternative means of furthering legitimate state interests, they may not be furthered at the expense of needy and dependent children. That is the command of the federal statute. King v. Smith, supra. In *Damico*, supra, the court noted:

" * * * The state has many possible ways to check the reliability of information gathered from potential

recipients, and thereby prevent fraud *ab initio*. It also may punish those who are subsequently found to have obtained benefits fraudulently. But it may not, consistently with the AFDC program, deny benefits to many eligible and needy children in order to avoid granting benefits to those few children whose parents have applied fraudulently." *Id.*, at 11,373.

The instant lawsuit in no manner involves what actions can be taken to Wisconsin law enforcement and public assistance officials after eligibility is established. In that regard, the state has not shown why many of the interests assertedly served by the legal action eligibility requirements could not be served *after* aid and assistance is furnished to children who are otherwise eligible.

As to the contention that the legal action requirements serve the permissible interest of determining whether there is, in fact, "continued absence," we agree with the *Damico* court statement quoted above. The presence or absence of legal action may be a relevant *factor* in ascertaining whether there is continued absence. However, it may not properly serve as the *only* factor. To do so prevents eligible children from establishing their actual eligibility in many cases where the husband is, in fact, absent, but for one reason or another the mother does not wish to commence legal actions.[8] The only manner in which the interests of the children the federal statute seeks to protect are safeguarded is if the state considers all relevant factors in determining whether or not there is a bona fide "continued absence."

We believe that there is a further way in which the operation of the legal action requirements in § 49.19(4) (d) conflicts with the purpose and intent of the federal statute. One of the articulated purposes of the Act is to "help maintain

---

8. In a recent article in the Wisconsin Law Review, Professor Redlich discusses some of the possible reasons a mother might wish not to commence actions against her absent husband. The article deals with the Wisconsin statutory provisions at issue herein and analyzes their validity under the Social Security Act. A. Redlich, "Unconstitutional Conditions on Welfare Eligibility," 1970 Wis.L.Rev. 451.

and strengthen family life." 42 U.S.C. § 601. The court in *Damico*, supra, noted in this regard:

"* * * An affidavit submitted by an attorney in the Watts office of the Los Angeles Neighborhood Legal Services Society, Inc., indicates that of the over 600 divorce actions in that office alone in 1967, approximately 50% were filed simply to qualify the families for aid. A requirement that so encourages legal separation of the parents does not 'help maintain and strengthen family life' as required by the federal statute. 42 U.S.C. § 601." *Id.,* at 11,374.

We agree with plaintiffs that this purpose of the Act is importantly threatened by an eligibility requirement that requires wives to take steps to terminate their marriage or prosecute their husbands.

## IV. HEW INTERPRETATIONS

The conclusions reached above by this court with respect to the legality of conditioning AFDC eligibility upon the commencement of legal actions are supported by interpretations of the federal statute made by HEW, the agency charged with its administration.

Section 3422.2 of the Handbook of Public Assistance Administration (HPAA) interprets "continued absence of the parent from the home." It provides:

*"Interpretation.*—Continued absence of the parent from the home constitutes the reason for deprivation of parental support or care under the following circumstances:

"1. When the parent is out of the home;

"2. When the nature of the absence is such as either to interrupt or to terminate the parent's functioning as a provider of maintenance, physical care, or guidance for the child; and

"3. When the known or indefinite duration of the absence precludes

counting on the parent's performance of his function in planning for the present support or care of the child.

"A child comes within this interpretation if for any reason his parent is absent, and this absence interferes with the child's receiving maintenance, physical care, or guidance from his parent, and precludes the parent's being counted on for support or care of the child. For example: The child's father has left home, without forewarning his family, and the mother really does not know why he left home, nor when he will return.

"Within this interpretation of continued absence the State agency in developing its policy will find it necessary to give consideration to such situations as divorce, pending divorce, desertion, informal or legal separation, hospitalization for medical or psychiatric care, search for employment, employment away from home, service in the armed forces or other military service, and imprisonment."

HPAA, § 3422.5(2), is entitled "Elimination of Requirements for Legal Action Against Parent" and provides as follows:

"It is recommended that State agencies not deprive children of their right to assistance by interposing as an additional eligibility factor a requirement that, before eligibility on a basis of continued absence can be determined, (a) legal action be taken against an absent parent or (b) the missing parent be located and action taken in order to obtain support. The availability of aid to dependent children should not preclude the agency from assisting a parent in initiating and pursuing legal action when such action may be for his or her children's best interest. Agency regulation, however, should not deprive a parent of the prerogative, exercised by other members of the community, to arrive at decisions in accordance with his own best judgment. Conditions re-

quiring that legal action be taken against an absent parent before eligibility can be established deflect agency practice from the objective of the aid to dependent children program. Because these conditions interpose barriers to establishing eligibility, the very need for assistance brings external pressure upon parents to take decisive steps (such as court action against a spouse) before they have had an opportunity to arrive at decisions according to their best judgment. Legal action taken by the parent to meet the agency's conditions may result in additional strains in relationships within the home, or may unwisely force the permanent severance of relationships with the absent parent. It is recommended, therefore, that the decision of one of the parents to assume parental responsibility without seeking support from the absent spouse, not be a barrier to receipt of aid to dependent children, if the children are otherwise eligible."

## V. CONCLUSIONS

We find that subsections 4 through 7 of § 49.19(4) (d) are incompatible with the Social Security Act of 1935, 42 U.S. C. § 601, et seq. In subsections 4 through 7 of § 49.19(4) (d), Wisconsin has imposed AFDC eligibility requirements which are inconsistent with the purpose and intent of the federal statute. These eligibility requirements operate to deny aid and assistance to needy and dependent children who are otherwise eligible for such aid and assistance. In interposing these eligibility requirements which are inconsistent with the federal statute between otherwise eligible children and their receipt of assistance, the state has breached its duty under the federal statute to furnish aid

and assistance to eligible individuals with reasonable promptness. King v. Smith, supra. While states are free, within certain guidelines,[9] to set and maintain their own levels of payment, the federal statute requires that children who are eligible be furnished assistance promptly. Where, as here, there exist alternative means of vindicating legitimate state interests, these interests may not be vindicated at the expense of needy and dependent children who are otherwise eligible for AFDC assistance.

Therefore, plaintiffs are entitled to a declaration that subsections 4 through 7 of § 49.19(4) (d) are incompatible and inconsistent with the Social Security Act of 1935. Accordingly, they are further entitled to a permanent injunction against the operation and enforcement of subsections 4 through 7 of § 49.19(4) (d) so long as federal funds are utilized in the operation of the Wisconsin AFDC program.

Plaintiffs further pray for an award of benefits "consisting of the past payments under Aid to Families with Dependent Children to which they have been entitled but wrongfully denied by the laws of Wisconsin." The defendants have been enjoined from enforcing the statute at issue since July of 1970. Plaintiff Roe obtained temporary injunctive relief almost immediately upon entering the lawsuit. Plaintiffs have neither suggested authority for their particular entitlement to retroactive benefits, nor have they suggested any reasonable means of fairly ascertaining the amount of benefits, assuming that there was entitlement. While we are aware of the fact that other federal courts have awarded retroactive benefits in public assistance cases,[10] on the present record in this particular case, we are satisfied that justice does not require the award

9. Rosado v. Wyman, supra; Alvarado v. Schmidt, supra.

10. Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1969), aff'd sub nom., Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970); Brooks v. Yeatman,

311 F.Supp. 364 (M.D.Tenn.1970); Machado v. Hackney, 299 F.Supp. 644 (W.D.Tex.1969); McDonald v. Dept. of Public Welfare, 430 F.2d 1268 (5th Cir. 1970); Bryson v. Burson, 308 F.Supp. 1170 (N.D.Ga.1969).

of retroactive benefits. However, we remand the issue of retroactive benefits to the single district judge for his consideration and decision. After affording both sides an opportunity to be heard further, if they so desire, he shall determine the entitlement to damages, if any, and the amount and mode of assessment, if any.

Therefore, on the basis of the foregoing and the entire record herein,

It is hereby ordered and adjudged that subsections 4, 5, 6, and 7 of § 49.19(4) (d), Wisconsin Statutes (1969), be and they hereby are declared violative of the Social Security Act of 1935, 42 U.S.C. § 601, et seq., in that they are inconsistent and incompatible with the purposes and intent of said Act.

It is further ordered and adjudged that defendants are hereby permanently enjoined from the further enforcement and implementation of subsections 4, 5, 6, and 7 of § 49.19(4) (d), Wisconsin Statutes (1969), as a condition of eligibility for the AFDC program in Wisconsin while federal funds are utilized pursuant to the Social Security Act in connection with said program.

The above shall serve as the findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

The three-judge court hereby terminates its consideration of subsections 4, 5, 6, and 7 of § 49.19(4) (d), Wisconsin Statutes (1969). The single district judge will proceed, consistent with this opinion, to hear and determine the issue of the retroactive entitlement to benefits withheld, if any.

TEHAN, Senior District Judge (dissenting).

I dissent for the reason that I see no substantial constitutional issue raised by the pleadings which would confer jurisdiction on this three-judge court. I therefore believe we are without pendent jurisdiction to consider plaintiffs' statutory claim.

The majority finds one jurisdiction-conferring claim to be the possibility of interference in an undefined way with a right of privacy in marriage. First, the statute challenged does not require action to affect plaintiffs' marital status directly. Second, the parties affected by the statute find it necessary to seek AFDC because their marriage relationships have, in fact, become dormant. Their spouses are absent from the home. I find it difficult to agree that there is a constitutional right of privacy in a presently inactive relationship.

Neither do I perceive a due process violation existing by reason of establishment of a conclusive presumption. The statute does not purport to set up a presumption. Rather, it establishes an eligibility requirement the validity of which, in my opinion, is a question of federal statutory, not constitutional, law.

Since I do not believe that a three-judge court should act in this case I indicate no opinion on the merits of the plaintiffs' statutory claim.